FILED

APR 2 1 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESLIE M. WHITWORTH,

     Plaintiff,

                              CV 08-968-PK

                              FINDINGS AND

v.                            RECOMMENDATION

NATIONAL ENTERPRISE SYSTEMS,
INC., RUSS DOE, and MICHELLE DOE,

     Defendants.

PAPAK, Magistrate Judge:

     This action was filed by plaintiff Leslie M. Whitworth against defendant National

Enterprise Systems, Inc. ("National"), and two of its employees, Doe defendants Russ and

Michelle, on August 19, 2008. Whitworth alleged defendants' liability under the federal Fair

Debt Collection Practices Act (the "FDCPA") and the Oregon Unlawful Debt Collection

Practices Act (the "OUDCPA"). Whitworth's claims were dismissed after the parties reported

Page 1 - FINDINGS AND RECOMMENDATION

their dispute settled.

Now before the court is Whitworth's motion (#53) for attorney fees and costs. I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Whitworth's motion should be granted, and Whitworth should be awarded his attorney fees in the amount of $30,460.50 and costs in the amount of $415.00.

## BACKGROUND

Defendant National is in the business of managing and collecting overdue debts and accounts receivable. In or around November 2007, National acquired a delinquent consumer debt owed by plaintiff Whitworth. Whitworth alleged that between November 21, 2007, and December 6, 2007, defendants and National employees "Michelle" and "Russ" contacted him by telephone at least 28 times in the course of National's efforts to collect the debt. He alleged that in these telephone calls Michelle and Russ repeatedly and improperly requested personal and financial information, accused him of fraud, and threatened him with legal action, as well as vilifying and abusing him, all in violation of the FDCPA and OUDCPA, which prohibit abusive or unfair debt collection practices.

On February 28, 2008, Whitworth filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. He listed his potential claim against the defendants among his assets, valuing the claim at approximately $1,000 and characterizing it as a claim under the FDCPA. Subsequently, on May 8, 2008, Whitworth amended his petition, again listing among his assets a potential FDCPA claim valued at approximately $1,000. On June 2, 2008, the Bankruptcy Court confirmed Whitworth's debtor's plan.

This action was filed August 19, 2008. Whitworth alleged defendants' liability for

Page 2 - FINDINGS AND RECOMMENDATION

violation of both the FDCPA and the OUDCPA, and sought federal statutory damages of $1,000,
state statutory damages of $200, punitive damages in the amount of $15,000, plus "actual
damages" and attorney fees.

On December 9, 2008, defendants moved for summary judgment on the ground that
Whitworth, because he had requested bankruptcy protection, was not the party in interest entitled
to pursue the claims alleged in his complaint. The court denied defendants' motion for summary
judgment on March 6, 2009. Defendants subsequently moved for partial summary judgment on
April 30, 2009, on the ground that Whitworth was judicially estopped from seeking damages in
excess of $1,000 on his FDCPA claim and from litigating his OUDCPA claim, in consequence of
his valuation of the claim at $1,000 and characterization of the claim as one arising under
FDCPA in his bankruptcy petition. The court denied defendants' motion for partial summary
judgment on September 9, 2009.

On December 15, 2009, the parties reported their dispute settled following court-ordered
mediation. According to the terms of the parties' settlement, defendants agreed to pay to
Whitworth, in exchange for dismissal of his claims against them, $2,500 plus his reasonably
incurred attorney fees.

## ANALYSIS

As a preliminary matter, Whitworth informally requests that the court take judicial notice
of the following:

> Plaintiff, Leslie M. Whitworth, brought claims against Defendant, National
> Enterprise Systems, Inc., for violations of state and federal debt collection laws.
> These claims were based on alleged abusive conduct.
>
> On or about August 19, 2008, Plaintiff filed this action in district court.
> Defendant responded to Plaintiff's suit on or about September 29, 2008.

Page 3 - FINDINGS AND RECOMMENDATION

In December of 2008, Defendant filed the first of two motions for summary judgment.

After being forced to secure an extension of time to respond, Plaintiff responded to the first motion for summary judgment on January 21, 2009. The Court eventually denied Defendant's motion.

The parties entered extensive discovery that included written discovery as well as the deposition of Plaintiff Leslie M. Whitworth.

Defendant filed a second dispositive motion, Motion for Partial Summary Judgment, on April 30, 2009. Plaintiff responded to this motion in May. The Court eventually denied this motion in August. Defendant then filed objections to the Findings and Recommendations to which Plaintiff responded on September 3, 2009. The Findings were upheld by Judge King.

The parties then proceeded to mediation where, over the course of two sessions with the mediator, the case resolved.

Federal Rule of Evidence 201(d) provides that "[a] court shall take judicial notice [of an adjudicative fact] if requested by a party and supplied with the necessary information." An adjudicative fact is subject to judicial notice when the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). As to certain of the putative facts set forth above, *i.e.* those that may be verified by reference to the court's docket or to the documents the parties have submitted to the court, the facts may be deemed established without recourse to the mechanism of judicial notice. The court is aware of the existence and contents of all documents filed with the court in this action.

The remaining putative facts, *e.g.* that "[t]he parties entered extensive discovery that included written discovery," are clearly not fit matters for judicial notice. These putative facts are matters of purely private import, not generally known in this district, the truth or falsity of

Page 4 - FINDINGS AND RECOMMENDATION

which is not determinable by reference to any unimpeachably authoritative source.

For the foregoing reasons, Whitworth's informal request for judicial notice should be denied.

## I.    Plaintiff's Entitlement to Award of Attorney Fees and Costs

The Fair Debt Collection Practices Act provides for award of attorney fees and costs to a successful plaintiff in any action to enforce a defendant's liability for actual and/or statutory damages arising out of the defendant's violation of the FDCPA. *See* 15 U.S.C. § 1692k(a)(3). Here, it is clear that Whitworth was successful in his action against defendants: defendants agreed to settle the claims against them for $2,500, an amount in excess of the maximum statutory damages available ($1,000) for violation of the FDCPA. Moreover, defendants do not contest Whitworth's entitlement to attorney fees under Section 1692k; rather, defendants concede Whitworth's entitlement to fees in some amount, and contest only the reasonableness of the amount Whitworth now requests. Because Whitworth's FDCPA action was successful, he is entitled to an award of his reasonably incurred attorney fees and his costs expended in pursuing this action.

## II.    Attorney Fees

Determination of a reasonable attorney's fee begins with the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986).

Whitworth relied on the services of four attorneys in pursuing his action against defendants, specifically, E. Clarke Balcom, Anthony Bonucci, Marcus Shirzad, and Shannon Sims. Whitworth expressly requests compensation for 19.8 hours' of Balcom's work at an hourly

Page 5 - FINDINGS AND RECOMMENDATION

rate of $275, for 94.8 hours' of Bonucci's work at an hourly rate of $245, for 2.5 hours' of

Shirzad's work at an hourly rate of $240, and for 116.3 hours' of Sims' work at an hourly rate of

$260, or a calculated total of $59,509.00 in compensation for attorney services. In addition,

Whitworth requests compensation for 26.5 hours of time expended by paralegal Chris Flamm at

an hourly rate of $130 and for 6.4 hours of time expended by other, unidentified legal assistants

at hourly rates of $130, or a calculated total of $4,277.00 in compensation for paralegal services

and/or other legal assistant services.

Based on the hour totals set forth in Whitworth's fee request and the hourly rates

requested, the total aggregate lodestar amount at issue may be calculated as $63,786.00.

However, the total amount requested in connection with billed time is set forth in the fee petition

as $54,070.30. Analysis of the time records submitted in support of the fee petition establishes

that the discrepancy is largely caused by write-offs and write-downs excluding some of the

expended hours from the lodestar calculation that are reflected in the time records but not in

Whitworth's briefing. In addition to Whitworth's failure to take into account these write-offs and

write-downs in his briefing, however, analysis of the time records further reveals a number of

mathematical errors in Whitworth's calculations, as, for example, in Sims' second time entry for

April 15, 2009, in which 0.1 hours are multiplied by an hourly rate of $260 to arrive at a product

of $20.80 rather than $26.00. Once Whitworth's write-offs, write-downs, and mathematical

errors are taken into account, it appears, based on the corrected time entries submitted in support

of his fee petition, that Whitworth intends to request a total fee award of $54,126, reflecting 18.3

hours of Balcom's time, 76.9 hours of Bonucci's time, 2.5 hours of Shirzad's time, 100.5 hours of

Sims' time, 24.8 hours of Flamm's time, and 2.3 hours of unidentified timekeepers' time.

Page 6 - FINDINGS AND RECOMMENDATION

### A.    Hours Reasonably Expended

Defendants challenge the reasonableness of the hours recorded by Whitworth's counsel in litigating Whitworth's claims on several grounds. First, defendants argue that the requested fees should be reduced by half on the presumption that "at least half" of the hours were expended in connection with Whitworth's OUDCPA claim rather than his FDCPA claim; defendants appear tacitly to construe the OUDCPA claim as unrelated to the FDCPA claim for fee-shifting purposes. Second, defendants argue that some of the hours for which compensation is requested were expended in connection with Whitworth's bankruptcy case or with his efforts to settle his underlying debt, rather than in connection with this action. Third, defendants argue that Whitworth's fee award should be reduced to reflect his supposed limited success in pursuing his FDCPA claim to settlement. Fourth, defendants assert that Whitworth's fee award should be reduced in some manner because Whitworth has not offered into evidence documentation of the fee arrangement, if any, he entered into with his counsel at the time they agreed to represent him. Fifth, defendants argue that Whitworth's fee award should be reduced to reflect his counsel's supposed lack of skill. Sixth, defendants argue that compensation for hours expended after 5:00 p.m. on December 1, 2009, is barred by the terms of the parties' settlement agreement, and characterize 0.6 hours of Whitworth's counsel's time as expended after that cut-off. Seventh, defendants characterize some of Whitworth's counsel's time expenditures as "unnecessary" or otherwise as unreasonable. Eighth, defendants characterize some of Whitworth's counsel's time entries as duplicative and therefore excludable from the lodestar calculation. Based on the foregoing objections, defendants conclude that Whitworth is entitled, at most, to $2,307.19 in attorney and legal assistant fees.

Beyond and in addition to the objections filed by the defendants, however, this court acknowledges its responsibility to scrutinize the Whitworth's fee petition independently to determine its reasonableness. *See, e.g., Gates v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their . . . claims); *Chalmers v. Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (district court determines numbers of hours reasonably expended in furtherance of the successful aspects of a litigation). Moreover, it is likewise the fee claimant's burden to "submit evidence supporting the hours worked . . . . Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433; *see also, e.g., Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-946 (9th Cir. 2007) (same).

For the reasons set forth below, I find that the evidence submitted by the parties supports an award of compensation for 17.6 hours of Balcom's time, 70.3 hours of Bonucci's time, 96.9 hours of Sims' time, 2.2 hours of Shirzad's time, 9.1 hours of Flamm's time, and 1.0 hours of time expended by other, unidentified legal assistants. Because the distinction will be of relevance to the lodestar calculation, *see infra* at Section II(C)(1), I note that 0.2 hours of Balcom's reasonably expended time was expended in 2007, and 17.4 hours in 2008 and 2009.

### 1.    Hours Expended on Tasks Unrelated to any Claim Asserted in this Action

Whitworth is entitled to compensation for attorney time that was "reasonably necessary" to the litigation of the claims asserted in this action only. *See, e.g., Hensley*, 461 U.S. at 434; *see also* 15 U.S.C. § 1692k(a)(3). Defendants assert that a proportion of the hours as to which Whitworth requests compensation was expended in connection with Whitworth's bankruptcy proceedings and/or with his efforts to settle his underlying debt to National. Analysis of the time records submitted in support of Whitworth's fee petition establishes that several time entries make reference to a duty to report certain information to the trustee of Whitworth's bankruptcy estate, but, as defendants themselves have frequently stated in their briefing to the court, that duty arose within the context of this action, and time spent in connection with that duty is not properly characterizable as time expended in connection with litigating Whitworth's bankruptcy proceeding.

By contrast, analysis of the time records reveals three time entries – attorney Bonucci's second time entry for April 24, 2008, and third time entry for November 13, 2008, and paralegal Flamm's time entry for April 23, 2008, totaling 0.3 hours of Bonucci's time and 0.2 hours of Flamm's time – reflecting time expended in efforts to settle Whitworth's underlying debt. These hours should be excluded from the lodestar calculation.

### 2.    Failure to Provide Documentary Evidence of Fee Arrangement

Defendants assert, without citing any legal evidence in support of their assertion, that Whitworth's fee award must necessarily be reduced, in an unspecified amount and according to an unspecified mechanism, due to Whitworth's failure to offer into evidence his fee agreement with his counsel. I am unaware that Whitworth is under any obligation to offer such evidence.

Page 9 - FINDINGS AND RECOMMENDATION

In the absence of any legal authority conditioning Whitworth's entitlement to fees under the

FDCPA on disclosure of his fee agreement with his counsel, I conclude that no reduction in

Whitworth's fee award could be warranted on the ground that Whitworth failed to provide the

court with documentary evidence of his counsel's fee arrangements.[1]

### 3.    Hours Expended Following Settlement of the Parties' Dispute

Defendants assert that Whitworth's counsel submitted time records for 0.6 hours

expended following 5:00 p.m. on December 1, 2009.  Whitworth does not dispute that, under the

terms of his settlement agreement with defendants, he is not entitled to request compensation for

time expended following that date and time.  However, because analysis of the time records does

not establish that any of the time for which compensation is requested was expended subsequent

to the cut-off time, no reduction in Whitworth's fee award is warranted on the ground that

compensation is requested for time expended following 5:00 p.m. on December 1, 2009.

### 4.    Related versus Unrelated Claims

Reasonable hours include only those expended in furtherance of successful claims, or of

claims closely related to successful claims.  *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir.

1994).  Claims are closely related for fee-shifting purposes if they "involve a common core of

facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)

(emphasis original).  Here, defendants appear tacitly to characterize Whitworth's OUDCPA

claim, which does not provide for award of attorney fees to successful complainants, as unrelated

---

[1] Moreover, in connection with his reply briefing, Whitworth provided the court with a courtesy copy of his retainer agreement with his counsel.  The agreement provides that Whitworth will pay $275 per hour for all attorney time expended on his case, without regard to the identity of the attorney performing legal services.  The agreement further provides that Whitworth will pay $130 per hour for paralegal time expended on his case.

to his FDCPA claim, which does provide for such fee shifting.

Defendants' tacit characterization is entirely groundless. The two claims arise out of precisely the same underlying facts, and are premised on closely related legal theories. The OUDCPA prohibits substantially the same behavior as does the FDCPA, and provides for similar, although not identical, relief where such prohibitions are violated. Under *Webb*, therefore, the two claims were closely related for fee-shifting purposes, and time spent in litigating the OUDCPA claim should not be excluded from the lodestar calculation.

In addition, defendants object to being taxed with research and other tasks performed by Whitworth's counsel in connection with Whitworth's request for punitive damages and in connection with researching a claim that was never filed in this action, specifically, a claim for intentional infliction of emotional distress. However, because Whitworth's request for punitive damages was properly pled in connection with his OUDCPA claim, and because the potential intentional infliction claim, had it been filed, would have been premised on precisely the same facts as those underlying the FDCPA claim, time spent in connection with these claims likewise should not be excluded from the lodestar calculation.

### 5.    Redundant or Duplicative Expenditures of Time

The courts of this district routinely exclude from the lodestar calculation any time entries indicating that more than one lawyer performed the same task. *See, e.g., Taylor v. Albina Cmty. Bank*, No. CV-00-1089-ST, 2002 US Dist LEXIS 25580, *11-12 (D. Or. October 2, 2002). Specifically, the courts of this district have held that:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent. Instead it can only shift the reasonable attorney fee expended. A fee that is "not excessive" may still be unreasonable. When attorneys hold a telephone or personal conference, good

Page 11 - FINDINGS AND RECOMMENDATION

> "billing judgment" mandates that only one attorney should bill that conference to
> the client, not both attorneys. The same good "billing judgment" requires
> attorneys not to bill for more than two attorneys to review pleadings or to attend
> oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 US Dist LEXIS 7763, *14 (D.

Or. Feb. 8, 2001). Scrutiny of the time records submitted in support of Whitworth's fee petition

reveals a number of such duplicative expenditures of time, as for example, the conferences and

meetings between Balcom and Bonucci on November 12, 2008, and November 17, 2008, as to

which both attorneys billed their time. Because it is always inappropriate to tax an opposing

party with such duplicative expenditures of time, the following time entries should be excluded

from the lodestar calculation: for attorney Bonucci, his time entry for September 29, 2008, first

time entry for November 12, 2008, first time entry for November 17, 2008, first time entry for

January 9, 2009, first time entry for January 13, 2009, first time entry for January 16, 2009, first

time entry for January 21, 2009, first time entry for February 9, 2009, and first through fourth

time entries for February 12, 2009, totaling 3.4 hours; for attorney Sims, his first time entry for

April 9, 2009, third time entry for April 21, 2009, second time entry for May 5, 2009, first time

entry for May 7, 2009, fourth time entry for May 19, 2009, first time entry for June 4, 2009,

second through fourth time entries for June 9, 2009, second time entry for June 26, 2009, sixth

time entry for August 5, 2009, and second time entry for September 3, 2009, as well as 0.3 hours

of his second time entry for May 8, 2009, totaling 2.8 hours; for attorney Shirzad, his time entry

for December 7, 2007, totaling 0.3 hours; for paralegal Flamm, his time entry for March 3, 2008,

first and second time entries for May 15, 2008, time entry for July 8, 2008, time entry for August

15, 2008, November 25, 2008, time entry for February 17, 2009, first time entry for March 17,

2009, time entry for March 25, 2009, time entry for March 31, 2009, time entry for April 7, 2009,

Page 12 - FINDINGS AND RECOMMENDATION

first time entry for April 9, 2009, third time entry for April 21, 2009, time entry for April 24,

2009, first and second time entries for April 29, 2009, time entry for April 30, 2009, time entry

for May 5, 2009, time entry for May 7, 2009, time entry for May 14, 2009, time entry for May 21,

2009, first time entry for May 26, 2009, first time entry for May 28, 2009, second time entry for

May 29, 2009, time entry for June 29, 2009, time entry for August 27, 2009, first time entry for

September 9, 2009, time entries for November 17, 2009, and time entries for December 1, 2009,

as well as 0.1 hours of his time entry for November 12, 2008, 0.1 hours of his time entry for

November 17, 2008, 0.1 hours of his time entry for February 6, 2009, 0.1 hours of his first time

entry for April 21, 2009, 0.1 hours of his first time entry for May 18, 2009, 0.2 hours of his first

time entry for May 19, 2009, 0.1 hours of his second time entry for September 9, 2009, 0.1 hours

of his time entry for November 16, 2009, 0.1 hours of his time entry for November 19, 2009, 0.1

hours of his time entry for November 23, 2009, and 0.1 hours of his second time entry for

November 24, 2009, totaling 14.6 hours; for unidentified legal assistant "JZ," his or her first time

entry for May 8, 2009, as well as 0.2 hours of his or her time entry for September 29, 2008, and

0.2 hours of his or her time entry for October 20, 2008, totaling 0.5 hours, and for unidentified

legal assistant "JP," 0.2 hours of his or her time entry for August 15, 2008, totaling 0.2 hours.

### 6.    Clerical or Secretarial Tasks

Costs associated with clerical tasks are typically considered overhead expenses reflected

in an attorney's hourly billing rate, and are not properly reimbursable. *See Missouri v. Jenkins*,

491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a

paralegal [or lawyer's] rate, regardless of who performs them . . .  [the] dollar value [of a clerical

task] is not enhanced just because a lawyer does it") (citation omitted).  Time entries reflecting

Page 13 - FINDINGS AND RECOMMENDATION

the performance of clerical tasks should therefore be deducted from the totals listed in the fee

petition. *See Frevach Land Co. v. Multnomah County*, No. CV-99-1295-HU, 2001 US Dist

LEXIS 22255, *37 (D. Or. December 18, 2001) (inappropriate according to practices "prevailing

. . . in this community [*i.e.*, Multnomah County] to bill a client, or to seek fees under a

fee-shifting statute, for purely secretarial tasks").

    Scrutiny of the time records submitted in support of plaintiffs' fee petition establishes that

Whitworth seeks compensation in connection with several such tasks, as, for example, Bonucci's

second time entry for December 9, 2008 ("Calendar relevant dates and deadlines"), or fourth time

entry for December 18, 2008 ("File stipulated motion to Extend Discovery").  Because time spent

in purely clerical tasks, by whomever performed, is properly excluded from the lodestar

calculation, *see Missouri*, 491 U.S. at 288 n.10, the following time entries should be excluded

from the lodestar calculation:  for Balcom, his time entry for November 7, 2008, and time entry

for March 17, 2009, totaling 0.5 hours; for Bonucci, his first time entry for July 11, 2008, third

and fourth time entries for August 15, 2008, time entry for August 26, 2008, time entry for

September 4, 2008, second time entry for December 9, 2008, fourth time entry for December 18,

2008, tenth and twelfth time entries for January 13, 2009, third time entry for January 15, 2009,

and third and fourth time entries for January 21, 2009, totaling 2.9 hours; for Sims, his time entry

for March 24, 2009, time entry for May 10, 2009, fourth time entry for June 26, 2009, and second

time entry for June 29, 2009, totaling 0.5 hours; for Flamm, his time entries for August 19, 2008,

and time entry for May 26, 2009, totaling 0.6 hours; for unidentified legal assistant "JP," 0.2

hours of his or her time entry for August 15, 2008; and for unidentified legal assistant "JZ," his or

her second time entry for May 8, 2009, totaling 0.4 hours.

Page 14 - FINDINGS AND RECOMMENDATION

### 7.    Inadequately Specified Tasks

Because it is the fee petitioner's burden to demonstrate that the compensation sought is

for hours reasonably related to the litigation of successful claims and claims closely related to

successful claims, *see, e.g., Frank Music*, 886 F.2d at 1557, failure to specify the subject of work

performed results in the exclusion from the lodestar calculation of any time spent in tasks whose

relatedness to such claims cannot be determined from the supporting time entries, *see, e.g.,*

*Frevach*, 2001 US Dist LEXIS 22255 at *45.  Scrutiny of the time records submitted in support

of Whitworth's fee petition reveals a relatively small number of such inadequately specified tasks

as, for example, the first portion of Balcom's second time entry for November 17, 2008 ("Call to

Jeff Hasson") or Sims' first time entry for April 17, 2009 ("Phone call from client"), neither of

which specifies the subject matter of the telephonic communication.  Because it is impossible to

determine from the evidence in the record whether these time expenditures were reasonably

necessary, the following time entries should be excluded from the lodestar calculation:  for

Balcom, 0.2 hours of his second time entry for November 17, 2008; for Sims, his first time entry

for April 17, 2009, first time entry for April 24, 2009, and time entry for November 24, 2009,

totaling 0.3 hours; and for Flamm, his time entry for June 12, 2009, and fifth time entry for

December 1, 2009, totaling 0.3 hours.

### 8.    Excessive Time Expenditure

I am also required to scrutinize Whitworth's fee petition "to [e]nsure that the time

expended [in furtherance of each task performed] was not excessive to the task. . . ." *Taylor*,

2002 US Dist LEXIS 25580, *8; *see also id.* at *16 ("A party is certainly free to pay its lawyers

whatever it wishes, but cannot expect to shift the cost of any . . . excesses to its opponent.

Instead it can only shift the reasonable attorney fee expended"). Defendants argue that the time expenditures recorded by Whitworth's counsel were clearly excessive to the tasks indicated in connection with Whitworth's motion to extend the deadline for his response to defendants' first dispositive motion, with filing Whitworth's complaint, with the conduct of discovery, with responding to defendants' first dispositive motion, with responding to defendants' second dispositive motion, and with negotiating the settlement of the parties' dispute. I am unpersuaded by defendants' arguments that hours expended in connection with these tasks should be reduced as excessive. Defendants mounted a vigorous and aggressive defense against Whitworth's claims, as they were entitled to do; the consequence of defendants' aggressive defense has been a relative increase in the hours Whitworth's counsel was required to expend in order to pursue their client's claims and interests. Defendants filed not one but two unsuccessful dispositive motions in this action, and will not be heard to object that responding to the arguments made therein proved time-consuming.

Analysis of the time records submitted in support of Whitworth's fee petition fails to establish that any of the time recorded was clearly excessive to the task. I conclude that no reduction in Whitworth's fee award is warranted on the basis of excessive expenditures of time.

### 10.   Lack of Skill

Defendants argue that the number of hours expended by Whitworth's counsel should be reduced based on Balcom's supposed lack of skill. However, because this argument properly goes to the rate that Balcom may reasonably be charged rather than to the number of hours reasonably expended, I will consider the "lack of skill" argument below, in Section II(B)(1).

### 11.   Limited Success

Defendants assert that Whitworth's fee award should be reduced by some unspecified "multiplier" based on Whitworth's supposed limited or partial success in pursuing his claims to settlement. Incongruously, defendants advance in support of their assertion the arguments, *inter alia*, that "[i]f the value of the claim was only the $1,000 he listed in bankruptcy, and he received *only $2,500*, he achieved only limited success" (emphasis supplied) and that "[a]ll the while he was exposed to a Rule 68 reversal if he did not obtain a judgment for more than $1,201 when he stated under oath two times that the value of his claim was $1,000." Because defendants' argument premised on Whitworth's supposed limited success does not go to the number of hours reasonably expended, but rather to whether the resulting product should be adjusted following the lodestar calculation, I will consider the "limited success" argument below, in Section II(C)(2).

### B.    Reasonable Rate

It is well settled within the Ninth Circuit and in this District that:

> The prevailing market rate in the community is indicative of a reasonable hourly rate. . . . The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262-1263 (9th Cir. 1987), *citing Blum v. Stenson*, 465 U.S. 886, 895-897, 895 n. 11 (U.S. 1984).

Whitworth requests that attorney Balcom's time be compensated at an hourly rate of $275, attorney Bonucci's time be compensated at an hourly rate of $245, attorney Sims' time be compensated at an hourly rate of $260, attorney Shirzad's time be compensated at an hourly rate of $240, paralegal Flamm's time be compensated at an hourly rate of $130, and all unidentified legal assistants' time be compensated at an hourly rate of $130.

### 1.    Rates for Attorney Balcom

In a sworn affidavit, Balcom provides evidence that he has been admitted to the practice of law since October 2001, and that he has experience in FDCPA litigation and as a bankruptcy attorney.  He further provides his sworn testimony that his requested hourly rate of $275 "is justified by [his] experience, the nature and complexity of the cases, and the relative risk involved in consumer cases."

Defendants provide the court with a copy of the Oregon State Bar 2007 Economic Survey as evidence of prevalent community rates.  In addition, defendants offer the sworn testimony of their counsel, Jeffrey Hasson, that "no more than $239 per hour" is a reasonable rate for an attorney of Balcom's experience, and the sworn testimony of defense expert David DeBlasio that "$239 per hour is more than a reasonable hourly rate" for an attorney of Balcom's experience. Defendants also argue that Balcom displayed a lack of skill in pursuing this litigation that could warrant a reduction in Whitworth's fee award.

According to the 2007 Economic Survey, which provides useful information as to rates actually charged by Oregon attorneys in 2006, the median hourly rate for legal services charged by Portland-area attorneys with four to six years' experience was $185 in 2006, with a 25th percentile rate of $170, a 75th percentile rate of $210, and a 95th percentile rate of $240, and the median hourly rate charged by Portland-area attorneys with seven to nine years' experience was $225 in 2006, with a 25th percentile rate of $200, a 75th percentile rate of $275, and a 95th percentile rate of $360.  An appropriate method for adjusting the foregoing rates for inflation in order to estimate the corresponding rates prevalent in the Portland legal community in 2007, 2008 and 2009, when this action was litigated, is to multiply the 2006 rates times the consumer

price index for urban consumers ("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by the CPI-U for 2006. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 205.7 for 2006, of 212.230 for 2007, of 219.646 for 2008, and of 218.822 for 2009. On this method, the estimated median hourly rate for legal services charged by Portland-area attorneys with six years' experience in 2007 would therefore be $190.87, with an estimated 25th percentile rate of $175.40, an estimated 75th percentile rate of $216.67, and a 95th percentile rate of $247.62, the estimated median hourly rate for legal services charged by Portland-area attorneys with seven years' experience in 2008 would therefore be $240.25, with an estimated 25th percentile rate of $213.56, an estimated 75th percentile rate of $293.64, and a 95th percentile rate of $384.41, and the estimated median hourly rate for legal services charged by Portland-area attorneys with eight years' experience in 2009 would therefore be $239.35, with an estimated 25th percentile rate of $212.76, an estimated 75th percentile rate of $292.54, and a 95th percentile rate of $382.97.

Although I am unpersuaded by defendants' arguments that Whitworth's fee award should be reduced based on Balcom's supposed lack of skill as an attorney, the record contains no evidence suggesting that Balcom's reasonable hourly rate should exceed the median rate charged by Portland attorneys of like vintage. I therefore find that the hourly rate at which Balcom's time expenditures should be compensated is $190 for hours expended in 2007, and $240 for hours expended in 2008 or 2009.

### 2.    Rates for Attorneys Bonucci and Shirzad

Whitworth offers no evidence into the record as to Bonucci's experience or as to Shirzad's

experience. I take judicial notice that Bonucci's bar number indicates that he joined the Oregon State Bar in 2006, and that Shirzad's bar number indicates that he joined the Oregon State Bar in 2007. Defendants submit the sworn declarations of Hasson and DeBlasio that a reasonable hourly rate for Bonucci or for Shirzad would be no more than $177.

According to the 2007 Economic Survey, the median hourly rate for legal services charged by Portland-area attorneys with zero to three years' experience was $180 in 2006, with a 25th percentile rate of $162, a 75th percentile rate of $190, and a 95th percentile rate of $216. Adjusting these rates for inflation by the same method outlined above yields an estimated median hourly rate for legal services charged by Portland-area attorneys with zero to three years' experience in 2007 of $185.71, with an estimated 25th percentile rate of $167.14, an estimated 75th percentile rate of $196.03, and a 95th percentile rate of $222.86, an estimated median hourly rate for legal services charged by Portland-area attorneys with zero to three years' experience in 2008 of $192.20, with an estimated 25th percentile rate of $172.98, an estimated 75th percentile rate of $202.88, and a 95th percentile rate of $230.64, and an estimated median hourly rate for legal services charged by Portland-area attorneys with zero to three years' experience in 2009 of $191.48, with an estimated 25th percentile rate of $172.33, an estimated 75th percentile rate of $202.12, and a 95th percentile rate of $229.78.

In the absence of any information as to Bonucci's or Shirzad's experience, it is impossible for me to determine whether the median rate would constitute a reasonable rate for these attorneys. Indeed, the information in the record does not foreclose the possibility that these attorneys have never been employed full time, and that this matter constitutes the sum total of their experience. In light of the dearth of material information regarding these attorneys, I

Page 20 - FINDINGS AND RECOMMENDATION

conclude that their time expenditures may reasonably be compensated at an hourly rate not in excess of $170, approximately the 25th percentile rate for attorneys of zero to three years' experience during the years at issue here.

### 3.    Rate for Attorney Sims

In a sworn affidavit, Sims provides evidence that he has been admitted to the practice of law since December 2001, and that he has experience in FDCPA litigation and in wage and hour class action litigation. He further provides his sworn testimony that his requested hourly rate of $260 "is justified by [his] experience, the nature and complexity of the cases, and the relative risk involved in consumer cases." Defendants offer the sworn declarations of Hasson and DeBlasio that a reasonable hourly rate for Sims would be no more than $177.

As noted above, adjusting applicable 2007 Economic Survey rates for inflation yields an estimated median hourly rate for legal services charged by Portland-area attorneys with seven years' experience in 2008 of $240.25, with an estimated 25th percentile rate of $213.56, an estimated 75th percentile rate of $293.64, and a 95th percentile rate of $384.41, and an estimated median hourly rate for legal services charged by Portland-area attorneys with eight years' experience in 2009 of $239.35, with an estimated 25th percentile rate of $212.76, an estimated 75th percentile rate of $292.54, and a 95th percentile rate of $382.97.

As for Balcom, the record contains no evidence suggesting that Sims may reasonably be compensated at an hourly rate in excess of the median. I therefore find that the hourly rate at which Sims' time expenditures should be compensated is $240 for hours expended in 2008 or 2009.

### 4. Rate for Paralegal Flamm

Whitworth offers Flamm's sworn declaration that he is a "specialized paralegal." Whitworth offers no other evidence as to the reasonableness of the hourly rate requested for Flamm. Defendants submit the sworn declarations of Hasson and DeBlasio that a reasonable hourly rate for Flamm would be no more than $90. In the absence of any other information as to the hourly rate at which Flamm's time may reasonably be compensated, I conclude that Flamm's time may reasonably be compensated at an hourly rate of $90.

### 5. Rates for Unidentified Legal Assistants

Whitworth does not identify any legal assistant other than Flamm, although he requests compensation for time expended by several other legal assistants. The evidence in the record is silent as to whether these unidentified legal assistants are paralegals or legal secretaries. In the absence of information as to the identity, training, and job positions of these timekeepers, I find that Whitworth is not entitled to compensation for these legal assistants' time expenditures.

## C. Calculation and Adjustment of the Lodestar Figure

### 1. The Lodestar Product

The product of the 0.2 hours reasonably expended by Balcom in 2007 and his reasonable hourly rate of $190 for 2007 is $38, the product of the 17.4 hours reasonably expended by Balcom in 2008 and 2009 and his reasonable hourly rate of $240 for those years is $4,176, the product of the 70.3 hours reasonably expended by Bonucci and his reasonable hourly rate of $170 is $11,951, the product of the 96.9 hours reasonably expended by Sims and his reasonable hourly rate of $240 is $23,256, the product of the 2.2 hours reasonably expended by Shirzad and his reasonable hourly rate of $170 is $374, and the product of the 9.1 hours reasonably expended by

Flamm and his reasonable hourly rate of $90 is $819. As noted above, Whitworth may not reasonably be compensated for the 1.0 hours expended by unidentified legal assistants in connection with this action. Thus, the lodestar calculation results in a pre-adjustment total of $40,614.00.

### 2.    Adjustment

It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *See Pennsylvania*, 478 U.S. at 563-64. The factors that may properly be considered in determining and evaluating the lodestar figure include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Only those factors which are applicable need be addressed. *See, e.g., Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983).

It is within the discretion of the trial court judge to adjust the lodestar figure either: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, *see Hensley*, 461 U.S. at 435-36; or (2) upward in "rare" and "exceptional" cases, *Pennsylvania*, 478 U.S. at 565; *see also Perdue v. Kenny A.*, — U.S. —, 2010 U.S. LEXIS 3481, *18, *21 (2010). The presumption, however, is that the lodestar figure represents a reasonable fee. *See Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

As noted above, defendants argue strenuously that Whitworth met with only limited success in pursuing his claims to settlement, and that a reduction in his fee award is therefore warranted. The Supreme Court has held that "[a] reduced fee award is appropriate if the relief [obtained], however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440. While the courts do not adhere to any strict rule of proportionality in making fee awards, it is clear that the courts must compare the total amount of damages sought to the result actually obtained in addition to considering the excellence of the plaintiff's overall result in determining whether a fee award should be reduced for limited or partial success. *See, e.g.*, *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009), *citing City of Riverside v. Rivera*, 477 U.S. 561, 576, 576-578, 579, 585 (1986).

Here, Whitworth received $2,500, plus defendants' acknowledgment of his entitlement to award of attorney fees, in settlement of his claims. In his prayer for damages, by contrast, Whitworth sought federal statutory damages of $1,000, state statutory damages of $200, punitive damages in the amount of $15,000, plus "actual" damages and attorney fees. Whitworth did not indicate in his complaint the amount of his "actual" damages.[2] Whitworth thus received approximately 15% of the damages specifically set forth in his prayer for relief. However, although Whitworth may have over-reached in seeking an award of punitive damages, his

---

[2] National has previously offered evidence, which Whitworth did not dispute, that in "Supplemental Initial Disclosures" Whitworth indicated that he intended to seek compensation for non-statutory, non-punitive damages as follows: $150,000 for emotional distress, $40,000 for pain and suffering, $20,000 for injury to "repute" [sic], $10,000 for inconvenience, $7,500 for interference, $3,000 for medical bills, $24,000 for "future medical," and $20,000 for loss of earnings, or a total of $274,500. However, I find it would be inappropriate to measure Whitworth's relative success by reference to assertions he made to the defendants rather than strictly by reference to the damages prayed for in his complaint.

Page 24 - FINDINGS AND RECOMMENDATION

settlement award can be viewed as constituting an amount equal to the total statutory damages sought in Whitworth's prayer for relief plus a like amount representing his prayed-for "actual" damages. On this view, Whitworth's success was significantly less limited than the 15% figure might suggest.

Because Whitworth received in settlement an amount significantly less than the amount of damages he prayed for, and because he received no non-monetary benefit from his settlement to offset his lack of monetary success, I find that a 25% reduction in Whitworth's fees is warranted. I find that no other adjustment of Whitworth's fee award is warranted. After adjustment to reflect Whitworth's limited success, I find that he is entitled to award of attorney fees in the total amount of $30,460.50.

## III.   Costs

Whitworth additionally claims $1,387.50 in costs that he characterizes as compensable. Defendants object to Whitworth's claim of entitlement to compensation for his mediation fees and his parking fees. Whitworth provides no authority in support of his claim to entitlement for these fees, and I am aware of none. Whitworth should therefore be awarded his costs in the amount of $415.00, the portion of his bill of costs as to which defendants make no objection.

## CONCLUSION

For the reasons set forth above, Whitworth's motion (#53) for attorney fees and costs should be granted, and defendants ordered to pay his attorney fees in the amount of $30,460.50, and his costs in the amount of $415.00.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

Dated this 21st day of April, 2010.

Honorable Paul Papak
United States Magistrate Judge